1   JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)

2   J. GARRET DEAL (State Bar No. 249934)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,

3   PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue

4   Post Office Box 5288
Walnut Creek, CA 94596

5   Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

6

7   Attorneys for Defendant
CITY OF ANTIOCH

8               UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11   ERIC QUESADA, BENNY PUGH, JR.,    Case No. CV08-1567 JL
PAMELA SHERMAN, PATRICIA

12   QUESADA, JUAN CARLOS RIVERA and   **JOINT CASE MANAGEMENT**
PAGE BLEHM,                         **STATEMENT**

13
           Plaintiffs,

14                       Date:  July 9, 2008
                           Time:  10:30 a.m.

15     vs.                      Judge: Hon. James Larson
                           Dept.: Courtroom F, 15th Floor

16   CITY OF ANTIOCH, a municipal entity
form unknown, and DOES 1-50, unknown

17   Antioch Police Officers, Supervisors and
Policymakers,

18           Defendants.

19

20   **1.**    **Jurisdiction and Service**

21        The court has original jurisdiction and supplemental jurisdiction over this case.  No issues

22   exist regarding personal jurisdiction or venue.  All parties have been served and Defendant City

23   of Antioch has answered.  Though this issue may not technically relate to jurisdiction, Defendant

24   seeks to stay this action as three of the six named Plaintiffs still have pending state law criminal

25   prosecutions for resisting arrest arising out of their arrests on June 3, 2007.  The outcome of those

26   pending criminal prosecutions may have a direct impact on the triable issues in this civil rights

27   matter so a stay of this action is sought.  Plaintiffs do not agree to a stay, as discussed further

28   below.

2.    **Facts**

Plaintiffs' Contentions:

Sometime after midnight on June 3, 2007, a noise complaint was made by a neighboring resident of Club Q owned by Jess Quesada. An Antioch Police patrol car responded to the scene and the officer spoke to bartender, plaintiff Eric Quesada, who was outside smoking cigarettes and talking with several other people. All of the individuals complied with a request by the officer to go inside. On the way back inside plaintiff Eric Quesada made a mildly sarcastic remark to one of the officers, but did not use threatening or profane language.

Some few minutes later, without any justification, several defendant members of the Antioch Police Department came into Club Q and demanded that Eric Quesada, who was now working behind the bar, come outside. Eric Quesada asked the officers why he had to come outside with them. In response, the defendants became extremely aggressive, verbally and physically; one officer threatened to use force and unholstered his Taser gun. Eric Quesada agreed to go outside but was nonetheless continually shoved, and otherwise roughly handled, from the moment he came out from behind the bar until he was out on the sidewalk. Once outside Eric Quesada asked why he was being ordered out of the club. At that point, again without reason or provocation, he was Tasered at least twice and otherwise assaulted by defendant Antioch police officers.

Thereafter, the DJ who was working that night, plaintiff Benny Pugh Jr., went outside to see what was happening to Eric. He asked the officers what they were doing, at which point he was immediately and without provocation or justification, assaulted and Tasered by members of the Antioch Police Department.

After a short time, three women who were in the bar, plaintiffs Pamela Sherman, Page Blehm, and Patricia Quesada, came outside to find out what was happening to Eric Quesada and Benny Pugh. All three were assaulted by defendant Antioch Police officers and arrested on false charges of Penal Code §148 (resisting arrest/obstruction of an officer) and Penal Code §647(f) (public intoxication).

Defendant officers meanwhile closed and barred the doors of the club, trapping all the remaining patrons inside, causing panic and anxiety to numerous patrons stuck inside.

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    After some time, defendant officers opened the door of the bar, approached a bar patron,

2    plaintiff Juan Carlos Rivera who was upset with the treatment of his friends and fellow plaintiffs.

3    In response to plaintiff Rivera's protests, Antioch police officers pulled him outside,  where they

4    beat and Tasered him; with at least one officer beating Mr. Rivera with either a baton or large

5    flashlight, leaving a pool of blood that spilled from his body onto the ground.

6    On several occasions prior to and since this incident, defendant members of the Antioch

7    Police Department have told owner Jesse Quesada and others that Club Q will be shut down if

8    they don't "change their crowd", a thinly veiled reference to the racial makeup of the clientele.

9    Officers have made other statements which reflect an apparent policy on the part of police

10    department and its members of pressure to shut down Club Q, at least in part because of the

11    African-American and Hispanic clientele that frequent the club.   It should be noted that on

12    Saturday nights, Club Q has "urban music nights", when the clientele is predominantly African-

13    American.  It is on those nights that Club Q has had problems with the Antioch Police

14    Department, such as the police assaults and maltreatments of June 3, 2007.

15    Subsequent to the June 3, 2007 incident giving rise to this Complaint, members of the

16    Antioch Police Department, made good on their earlier threats to shut down Club Q, and made

17    false accusations, initiated and instigated an investigation by California State regulatory agencies,

18    including California Alcohol and Beverage Control and the state tax agencies.

19    Plaintiffs here allege that this overt, race-based aggression against Club Q and its minority

20    clientele by the Antioch Police Department and its defendant officers is part of a larger policy and

21    program of racial discrimination tacitly enacted by the City of Antioch and its policy-makers and

22    carried out by police and other officials.  In particular, despite a mortgage foreclosure crisis that

23    has hit the City of Antioch harder than virtually any other city in the country, Antioch police

24    officers,  a December, 2007, report by Public Advocates Inc. and Bay Area Legal Aid, after a five

25    month investigation of public and police department records and other information, showed  that

26    Antioch police officers apparently including several defendants have engaged in an extensive

27    pattern of harassment and interference with the housing rights of low-income African-American

28    families who are renting homes that might otherwise sit vacant. Plaintiffs allege that the City, the

1   Police and other authorities are engaged in a concerted, unconstitutional practice of racial

2   discrimination against African-Americans and Latinos, aimed at frightening and discouraging

3   them from residing or visiting in the town.

4        It should be noted that the false and bogus prosecution of plaintiffs Quesada, Pugh and

5   Rivera is part and parcel of the conspiracy and coverup by Antioch Police Officers, as false police

6   reports were authored by as many as 17 officers, replete with lies, inconsistencies and false

7   accounts of the events of June 3, 2007.  In fact, civilian witnesses who were present during the

8   siege upon Club Q by Antioch Police completely refute the officers version of events.

9        Undersigned counsel for plaintiff offered to present some of these exculpatory witness

10  statements to the Contra Costa County District Attorney's Office prior to that office's decision to

11  file criminal complaints, but this offer was never accepted.  In fact, counsel is informed and

12  believes, based upon communications with representatives of the District Attorney, that the Club

13  Q prosecutions are being supervised by a high-level Deputy District Attorney, outside of normal

14  protocol, and that no diversion or other offers short of a plea to the substantive charges will be

15  accepted.  This raises the question of the District Attorney's Office's complicity in the coverup

16  of the defendant officers' wrongful and unconstitutional actions at Club Q.

17       The procedural posture of the criminal case is that Defendants have filed a motion to

18  compel disclosure of  police personnel records for 17 Antioch Police officers, pursuant to

19  *Pitchess v Superior Court* (1974) 11 Cal.3d 531, and the City Attorney for the City of Antioch

20  has filed an opposition.  A hearing date has been set for July 18, 2008.  No trial date has been set.

21       Defendant's Contentions:

22       On the night of June 3, 2007, officers from the Antioch Police Department ("APD")

23  responded to a report from a neighbor of "Club Q", a bar located at 1611 A Street in Antioch,

24  California.  The neighbor complained of patrons loudly conversing and keeping her awake in an

25  alley way adjacent to her apartment.  Officer Joannides ("Joannides") of APD was the first officer

26  to respond.

27       When Joannides arrived, he observed several people being loud in the alley way.

28  Joannides instructed the subjects to go back into the bar due to their noise.  All complied except

JOINT CASE MANAGEMENT CONFERENCE          4
STATEMENT - CV08-1567 JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  Plaintiff Eric Quesada ("Quesada"), who faced Joannides, then raised his arms and walked

2  towards Joannides while yelling profanities.  Someone pulled Quesada back inside the bar at this

3  time.  Because the door to the bar had been left open and the music was loud enough to be heard

4  approximately fifty feet outside the bar, Joannides decided to enter the bar and speak with

5  Quesada, who Joannides knew to be the bar owner.  Joannides had also been informed that the bar

6  was over capacity that night, and given Quesada's responses towards him, Joannides asked for

7  additional units in order to conduct a "walk through" of the bar.

8     Three additional APD officers arrived to assist Joannides.  After being briefed, the officers

9  entered the bar and found it to be far over capacity.  There was no room to walk; the officers were

10  shoulder to shoulder with the patrons and were forced to keep their hands on their weapons

11  should someone attempt to grab one.  The officers located Quesada at the rear of the bar.  When

12  Joannides told Quesada he wanted to speak with him outside, Quesada again responded with

13  obscenities, telling Joannides he would not leave.  Quesada strongly smelled of alcohol; his eyes

14  were bloodshot and watery and he was unsteady on his feet.  Quesada was clearly intoxicated.

15     Joannides again requested Quesada to speak with him outside, as it was too loud inside the

16  bar and the officers were concerned for their safety given the large and hostile crowd.  Quesada

17  again refused, and when Joannides attempted to escort Quesada outside, Quesada jerked his arm

18  back and again cursed at Joannides.  After Joannides asked Quesada to go outside several

19  additional times, Quesada agreed and began to walk towards the front door.  As they walked

20  towards the front door, Quesada stopped and told other bar patrons that the officers were

21  harassing him.  Joannides felt that the bar patrons were also trying to keep him from leaving.

22     As the officers and Quesada walked out the front door, Joannides saw numerous patrons

23  following them outside.  Joannides followed Quesada and another officer led Quesada outside.

24  Joannides explained to Quesada that he wanted to speak with him away from the noise of the bar

25  and the large crowd for officer safety reasons.  As they walked out the front door, Quesada

26  stopped and refused to walk any further.  Joannides put his hand on Quesada's shoulder and

27  instructed him to continue walking.  Instead, Quesada again jerked away from Joannides, then

28  turned towards Joannides and attempted to punch Joannides with a closed fist.

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    Reacting to Quesada's attempted assault and battery, Joannides deployed his Taser device

2    at Quesada. Quesada would still not comply with showing his hands to the officers so he had to

3    be tased again until he finally complied and was handcuffed.

4    During this same time period, numerous bar patrons filtered out of the bar and other

5    people who were loitering in the parking lot of the bar started to become unruly, aggressive,

6    combative and resistive. Additionally, other patrons in the bar were similarly becoming unruly,

7    aggressive, combative and resistive. There were an estimated 50-100 people in the parking lot.

8    Many people were drinking alcohol in the parking lot of the bar and there was also a strong odor

9    of the use of marijuana. Due to the unruly and combative crowd, significant officer safety issues

10   were raised. Several people willfully resisted the officers and delayed and/or obstructed the

11   officers in their attempts to maintain order and clear the area of the unruly and combative crowd.

12   The persons that fought with and/or resisted the officers and/or delayed and/or obstructed the

13   officers in their duties were then arrested by APD officers, some of which were the six Plaintiffs

14   in this action. It took almost the entire shift of officers (approximately 20 officers) to clear the

15   crowd in this area and restore order.

16   Many, if not all, of the Plaintiffs were arrested for violations of California Penal Code §§

17   69 and 148(a)(1), namely resisting arrest charges, as well as other charges. These criminal

18   charges against three of the involved Plaintiffs arising out of this incident are still pending in state

19   criminal court and that is why Defendant seeks to stay this action until those charges are resolved.

20   **3.    <u>Legal Issues</u>**

21       <u>Plaintiffs' Contentions</u>

22       **a.    Substantive Claims**

23   The incident involved needless police antagonism, machismo, petulance and arrogance of

24   the highest order. Officer Joannides and other officers then went into a bar, pulled out the

25   bartender (plaintiff Quesada) in a violent manner without reasonable suspicion to detain or

26   probable cause to arrest, and then successively assaulted or Tasered/beat all six plaintiffs without

27   any just cause, all while holding hostage almost all bar patrons who were panicking as their route

28   of exit was blocked at the order of the officers. Testimony will establish that "hostile" or

JOINT CASE MANAGEMENT CONFERENCE        6
STATEMENT - CV08-1567 JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1   "aggressive" actions by people at the bar, if there were any such, were brought on deliberately  by

2   the reckless, brutal, provocative and apparently racist, unlawful actions of the officers, including

3   the illegal detention, arrest, excessive force, and threats of violence in violation of the Ralph Act

4   and other California state provisions.

5          **b.     Monell Claims**

6          Plaintiffs also will seek to establish Monell claims related to the custom and policy of the

7   police department of organized animosity towards newer, non-white residents and visitors in

8   Antioch.

9          **c.     Stay or Proceedings Pending Criminal Prosecution**

10         Defendant seeks a stay of the proceedings in this action, pending the outcome of the

11  (false) prosecution of three of the six plaintiffs named in this suit, under the *Younger* doctrine and

12  the California Govt. Code as stated below.   An outline of plaintiffs arguments against such a stay

13  are presented here.

14         *Young*er established that federal courts should not enjoin pending state criminal

15  prosecutions except in exceptional circumstances.   Plaintiffs have not sought to enjoin such

16  prosecution. Rather, the <u>defendant</u> seeks a stay of these federal and state civil rights proceedings

17  seeking monetary damages, pursuant to *Gilbertson v. Albright* (9th Cir. 2004) 381 F.3d 965, 984.

18         Plaintiffs submit that the central concern of *Younger*, which requires that federal courts

19  abstain from enjoining state judicial proceedings which implicate overlapping constitutional

20  issues, is not necessarily present here.  For example, the adjudication of the issue of whether

21  plaintiffs "resisted" or "obstructed" the officers in violation of Penal Code § 148 or §69 do not

22  necessarily turn on the legal issue of the constitutionality of the detention or arrest, but rather the

23  factual question of whether the plaintiffs here (defendants in the criminal case) committed acts or

24  omissions which violate the penal statutes.

25         Additionally, plaintiffs contend here that the state prosecution is essentially a sham

26  prosecution, brought in retaliation for or to discourage the exercise of the constitutional rights of

27  plaintiffs.  The posture of the Contra Costa County District Attorney's Office in apparently

28  making a special assignment of the (false) misdemeanor criminal prosecutions of plaintiffs

1   Quesada, Pugh and Rivera to a senior deputy D.A., and statements related to the negotiating

2   posture of the case strongly suggest that the prosecution is essentially agent for the coverup of the

3   defendant officers' actions.  Prior to the filing of the complaints against plaintiffs, counsel for

4   plaintiffs offered to give the District Attorney's office witness information which directly refute

5   the officers' version of events, but the offer was simply ignored.  Plaintiffs can only suggest that

6   these prosecutions were brought in bad faith.

7        In this context, bad faith "generally means that a prosecution has been brought without a

8   reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6

9   (1975).  Bad faith and harassing prosecutions also encompass those prosecutions that are initiated

10  to retaliate for or discourage the exercise of constitutional rights. *See, e.g., Younger*, 401 U.S. at

11  48.  A showing that a prosecution was brought in retaliation for or to discourage the exercise of

12  constitutional rights "will justify an injunction *regardless* of whether valid convictions

13  conceivably could be obtained." *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir.1981). The state

14  does not have any legitimate interest in pursuing such a prosecution; "[p]erhaps the most

15  important comity rationale of *Younger* deference-that of respect for the State's legitimate pursuit

16  of its substantive interests-is therefore inapplicable." *Wilson v. Thompson*, 593 F.2d 1375, 1383

17  (5th Cir.1979).

18       As for the California Govt. Code bar to state causes of action brought here under pendant

19  jurisdiction, plaintiffs may consider dismissing those claims without prejudice and filing claims in

20  state court pending the outcome of the criminal prosecution.

21       Defendant's Contentions

22       In relation to the stay issue, a stay is warranted here.  Defendant is informed and believes

23  that the Contra Costa County District Attorney's Office charged three of the six Plaintiffs with

24  criminal violations of resisting arrest related to this incident in February of 2008.  These criminal

25  charges are still pending against these three Plaintiffs.  Accordingly, Defendants are seeking to

26  stay this federal civil rights case pending resolution of the ongoing state criminal cases under the

27  doctrines set forth in the cases of Younger v. Harris (1971) 401 U.S. 37, 49-53, and per

28  Gilbertson v. Albright (9th Cir. 2004) 381 F.3d 965, 984.  Additionally, California law prohibits a

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    defendant charged in a criminal case from bringing a civil action against police officers or their

2    public entity employers based upon conduct of the peace officer relating to the offense for which

3    the accused is charged, while the charges against the accused are pending before a superior court.

4    Cal. Gov. Code § 945.3.

5         Here, the determination of the criminal charges of resisting arrest against these three

6    Plaintiffs will likely collaterally estop those same issues (namely the lawfulness of the arrest and

7    force used to obtain the arrest) from being re-litigated in this civil action that involves such

8    claims of wrongful arrest and excessive force.  If these Plaintiffs are convicted of the crimes

9    alleged, or plea to such claims, namely resisting arrest, they are precluded from relitigating some

10   of the same issues and some of their civil claims in this civil rights matter may be barred.  If this

11   matter should go forward in discovery and towards trial without the criminal issues being

12   decided, there may be differing outcomes between the state ruling and this Court which will be

13   problematic and subject to appellate review.  Accordingly, the Defendant asserts that this matter

14   should be stayed pending resolution of state criminal cases and have filed a stipulation and

15   proposed order to do so.

16        In terms of substantive claims, Defendant contends that their officers used reasonable

17   force to control a hostile, aggressive and unruly crowd.  Defendant also contends that the bar was

18   severely overcrowded and presented a serious threat to its patrons and the Officers.  Defendant

19   asserts that Plaintiffs attempted to assault and batter them and they used reasonable force to

20   alleviate those threats.  Several Plaintiffs refused to comply with Officer commands to leave the

21   scene and/or stop aggressively moving towards the Officers who were attempting to control the

22   crowd, forcing the Officers to take actions towards Plaintiffs.

23   **4.    Motions**

24        Defendant will file a motion to stay this action should the Court prefer Defendant to file

25   such a motion if a stipulation and proposed order to stay this action is not sufficient.  The parties

26   are willing to discuss this issue further at the conference with the Court.  Defendant is evaluating

27   the filing of a motion for summary judgment and/or adjudication.  The parties will file the

28   appropriate motions in limine at the time of pre-trial proceedings.

JOINT CASE MANAGEMENT CONFERENCE        9
STATEMENT - CV08-1567 JL

1    Plaintiffs position on the Motion for Stay is as stated above.

2    **5.**    **Amendment of Pleadings**

3    No amendments to the pleadings are anticipated.

4    **6.**    **Evidence Preservation**

5    The parties mutually agree to preserve all potentially relevant evidence.

6    **7.**    **Disclosures**

7    The parties shall exchange their initial disclosures by the date of the Initial Case

8    Management Conference.

9    **8.**    **Discovery**

10    Plaintiffs discovery efforts will focus on three areas: (1) Discovery related to Police

11    personnel records of the officers involved in the June 3, 2007 incident; (2) Policy discovery,

12    including depositions of policy makers and/or persons most knowledgeable of plaintiffs' Monell

13    claims; (3) percipient witness depositions, including up to 17 police officers and civilian

14    witnesses.

15    The Defendant will take the depositions of the Plaintiffs, any percipient witnesses

16    identified in discovery, as well as will propound written discovery on Plaintiffs. Defendant may

17    need to take more than 10 depositions in this matter due to the number of parties and witnesses

18    involved and hereby request approval from the Court to take up to fifteen defense depositions

19    without the need for seeking leave of Court. If additional depositions are needed, Defendant can

20    seek leave for such via letter to the Court and upon a showing of good cause. Other discovery by

21    Defendant is unknown at this time. Defendant will be opposing the production of any personnel

22    related documentation, especially broad discovery in that regard, in this civil case.

23    **9.**    **Class Actions**

24    This is not a class action matter.

25    **10.**    **Related Cases**

26    Undersigned Plaintiffs' counsel are in the process of filing a civil complaint in the Federal

27    District Court on behalf of the owners of Club Q. The owners' complaint raises due process

28    issues raised in *Benigni v. City of Hemet* 879 F.2d 473, 478 (9th Cir. 1989), in that the due

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1   process clause protects a liberty or property interest in pursuing the common occupations or

2   professions of life, as well as pendant state claims.  The facts and racial discrimination issues

3   overlap significantly with the June 3, 2007 incident, as well as subsequent statements and actions

4   by Antioch Police Department members to shut down Club Q using the California ABC.  Thus,

5   plaintiffs will seek to relate the owners' complaint to this case.  Undersigned counsel anticipate

6   filing and serving the owners' complaint prior to Case Management Conference.

7         The parties are aware of the pending state law criminal cases pending versus three of the

8   six involved Plaintiffs.

9   **11.    Relief**

10        Plaintiffs seek compensatory and general damages for injuries, pain and suffering,

11  defamation, statutory penalties provided for under California Bane and Ralph Act provisions, as

12  well as attorneys fees pursuant to California Civil Code §52 and 42 U.S.C. §1988 .

13  **12.    Settlement and ADR**

14        Due to the number of involved parties and the interests at stake, the parties request a

15  settlement conference before a Magistrate Judge.  The parties expect they will be in a position to

16  discuss settlement after the depositions of the parties and witnesses have been conducted,

17  following the lifting of the stay of this action due to the pending state law criminal actions.

18  **13.    Consent to Magistrate Judge for All Purposes**

19        The parties consent to Chief Magistrate Judge James Larson only.

20  **14.    Other References**

21        This case is not suitable for reference to binding arbitration, a special master, or the

22  Judicial Panel on Multidistrict Litigation.

23  **15.    Narrowing of Issues**

24        It is not suitable to narrow any issues in this matter at this time.  The parties will seek to

25  narrow the issues in this matter for trial via the use of discovery.

26  **16.    Expedited Schedule**

27        This case cannot be handled on an expedited schedule.

28        / / /

17.    **Scheduling**

It is currently unknown when this matter can be prepared for trial pending the ongoing state law criminal proceedings versus three of the six involved Plaintiffs and the outstanding stay issue.

18.    **Trial**

The parties estimate that a jury trial is expected to last between 10 to 15 court days.

19.    **Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs have filed the Certification of Interested Entities or Persons and are unaware of any non-parties whose interests could be substantially affected by the outcome of the proceeding. Defendant concurs.

20.    **Other Matters**

The parties seek input from the Court as to whether this matter should be stayed in light of the pending state law criminal actions.  Plaintiffs will thereafter make a determination as to whether it intends to oppose defendant's motion for stay.  There does not appear to be any other matters needing discussion at this point.


Dated: June 2⁷ 2008                     MᴄNᴀᴍᴀʀᴀ, Dᴏᴅɢᴇ, Nᴇʏ, Bᴇᴀᴛᴛʏ, Sʟᴀᴛᴛᴇʀʏ,
                                        Pғᴀʟᴢᴇʀ, Bᴏʀɢᴇs & Bʀᴏᴛʜᴇʀs LLP


                                By: _____
                                        James V. Fitzgerald, III
                                        Noah G. Blechman
                                        J. Garret Deal
                                        Attorneys for Defendant
                                        CITY OF ANTIOCH


Dated: June 27, 2008              By: ___/S/ Gohel, Jai_____
                                        Jai M. Gohel
                                        Dennis Cunningham
                                        Attorney for Plaintiffs

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330